[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint, which complaint was dated April 2, 2001 and returnable to the court April 24, 2001, in which complaint the plaintiff petitioner wife sought a dissolution of the marriage, custody of the minor children, support for the minor children, alimony, an equitable division of all real and personal property and other remedy which in law or equity may appertain. Accompanying the complaint was a motion for alimony pendente lite, custody of minor children pendente lite, motion for support pendente lite and a motion for exclusive use of the family residence. Also accompanying the complaint was a motion for a restraining order requesting that the defendant be restrained from certain acts or conduct involving the plaintiff at her home or her place of employment. The usual automatic orders accompanied the complaint as well as the return of the marshal showing in-hand service on the defendant.
The defendant initially appeared pro se on April 25, 2001.
On May 2, 2001, there was filed with the court an application for relief from abuse filed by the plaintiff petitioner containing a statement of conditions from which relief was sought. The same executed on May 2, 2001.
On May 4, 2001, the defendant appeared by counsel and at the same time counsel for the defendant on May 4th filed an answer to the complaint and a cross complaint in which cross complaint the defendant sought a dissolution of the marriage, custody and custody pendente lite, joint legal and physical custody; support, temporary and permanent; alimony, temporary and permanent; an allocation of debt, an allowance to defend, a fair and equitable division of all real and personal property and such other relief as the court might deem appropriate.
On May 4, 2001, there was also filed by the defendant a request for reconciliation, which motion was granted on May 8, 2001.
On May 4, 2001, a pendente lite motion with regard to custody, support and alimony was filed with the court by the defendant as well as a motion for a restraining order on the part of the defendant requesting certain relief as concerns the conduct of the plaintiff CT Page 1387
On May 8, 2001, the defendant filed a motion requesting that the plaintiff be found in contempt as concerns certain action and conduct of the plaintiff as concerns books, records and matters pertaining to the alleged family business. It does not appear that that motion was acted upon.
On May 2, 2001, the plaintiff filed a further application for relief from abuse making certain claims with regard to the conduct of the defendant. Incident thereto, the court, Robaina, J., granted a restraining order as of May 14, 2001.
A stipulation by and between the plaintiff and the defendant incident to that restraining order was also entered into and was dated May 14, 2001.
Subsequently there was a continuation of the restraining order by the court, Dyer, J., dated May 29, 2001.
On May 29, 2001, the court, Dyer, J., appointed Attorney Tammie Gildea as attorney for the minor children issue of the parties. (See also proposals filed by the plaintiff and the defendant as concerns their acquiescing in the appointment of Attorney Gildea as counsel for the minor children.)
On May 14, 2001, a protective order was granted directing that there should be no contact between the plaintiff and the defendant and no stalking.
On May 30, 2001, plaintiff made a request of the court asking that the defendant submit to testing for drug analysis. It does not appear whether that motion was acted upon.
On June 4, 2001, the court, Dyer, J., entered certain additional orders with regard to the parties and their relationships with the children and the establishment of visitation as of that date. The same provided for phone contact, certain financial prohibitions and matters of like nature.
The plaintiff filed a financial affidavit with the court on June 4, 2001 with accompanying schedule. The defendant, in like manner, filed a financial affidavit on June 4, 2001.
On June 18, 2001, the court, Dyer, J., continued the outstanding restraining order.
On June 18, 2001, the plaintiff filed a further motion for contempt and payment of certain monies incident to which the court, Dyer, J., entered CT Page 1388 certain orders.
On June 20, 2001, the defendant moved for an accounting of funds as concerns the parties' jointly owned business and incident thereto, the court, Dyer, J., entered an order directing that a certain sum that had been received by the defendant from Social Security in the amount of $7,697.00 be held in escrow pending further order of the court.
On June 21, 2001, the defendant filed a motion for access as concerns the marital residence in order that he might secure certain effects, tools and matters of like nature.
A further motion for contempt was filed on June 21, 2001 by the defendant making certain claims as concerns the conduct of the plaintiff involving business matters, his mail and matters of like nature.
The court, Kenefick, J., accepted an agreement by and between the parties dated June 1, 2001 and filed on June 2, 2001, having to do with access to the minor children and financial matters. A subsequent stipulation was accepted by the court, Dyer, J., on August 27, 2001.
On July 10, 2001, the defendant filed yet another motion for contempt as concerns a claim of violation of orders earlier entered by the court, Dyer, J., pertaining to contact with the children and mail and matters of like nature.
Further updated financial affidavits were filed at that time by both the plaintiff and the defendant. The same being filed on July 23, 2001.
On August 27, 2001, there was filed with the court a stipulation executed by the parties and their counsel wherein certain funds that were held from Social Security might be released for the benefit of the minor children with further order of the court.
On October 12, 2001, the defendant filed a motion for appraisal of real estate at 787 Harland Road, Norwich.
On November 1, 2001, the defendant filed yet another motion as concerns contempt and a request for mediation through Family Relations with regard to the two minor children.
On December 5, 2001, a motion for sanctions and a motion to compel was filed with the court. The matter was subsequently the subject of an agreement by the parties dated December 17, 2001 and approved by the court, Devine, J. CT Page 1389
On December 17, 2001, there was filed with the court a certain agreement as concerns make-up visitation between the defendant and the minor children issue of the parties.
The plaintiff and the defendant with their respective attorneys and witnesses appeared before the Court on January 17, 2002, January 18, 2002 and January 22, 2002 and the matter was heard to a conclusion. The attorney for the minor children was also present during the proceedings.
The court makes the following findings of fact:
The plaintiff, whose maiden name, was Margaret Mathewson, and the defendant were united in marriage on June 23, 1979 in Norwich.
Both parties had been long-term residents of the state.
The marriage has irretrievably broken down with no reasonable prospect for reconciliation.
There are two minor children issue of this marital relationship whose names are Karley M. Krodel, born February 21, 1994, and Marlee B. Krodel, born April 23, 1990.
No other minor children have been born to the plaintiff wife from the date of the marriage to the present time.
Neither of the parties have been recipients of welfare from the State of Connecticut or any town, city or subdivision thereof.
The parties are in agreement with regard to joint legal custody of the two minor children. Reference will be made to the agreement in due course.
The court has jurisdiction.
The plaintiff was born November 13, 1956 and is now age 45. Her education extended through graduating from high school in 1974 and attending and graduating from the New London Academy of Hairdressing; one year matriculation was 1977. After graduating from the hairdressing academy, the plaintiff worked at an establishment known as The Hair Garden and was there for 13 years until 1989 acting in the capacity of a stylist and manager; the location being in the town of Groton. In addition to hair styling, the plaintiff did books, records and hiring procedures and put in a 40-hour week.
The plaintiff's testimony was to the effect that her health was good. CT Page 1390 She is not on any regimen of medications.
The plaintiff now conducts a business entity known as "Meg's Hair Salon" located at 16 New London Turnpike in Norwich. The premises are leased from a landlord and she has been in this business at that address for the last 12 years. The plaintiff now devotes most of her time to managing the establishment. She has an accountant now, one John Moulson, who was hired in May of 2001.
At this business entity, the plaintiff works 40 to 50 hours a week.
The two children issue of this marriage are now ages 7 and 11. The youngest child being in the second grade; the oldest in the sixth grade. The children reside with the plaintiff mother at the marital home on Harland Road in Norwich where they have resided for the last 20 years as a family.
The children have recently been in counseling for several months. This is counseling on a weekly basis.
The plaintiff's business pays for medical coverage for the plaintiff and the children. The plaintiff's testimony is to the effect that the monthly cost for medical coverage for the plaintiff and the children, which is paid by the plaintiff's business, is $787.00 a month.
The plaintiff has, as required, a sitter who looks after the children, one Courtney Woodworth, and, in addition, the plaintiff's mother helps and assists with the minor girls as able.
The plaintiff testified that the cost for the child care to Woodworth who looks after the children on Mondays, Wednesdays and Thursdays is to the amount of $100.00 a week.
The plaintiff's mother resides in the town of Bozrah, a neighboring town, and helps on occasion with the minor children.
The plaintiff at the time of her marriage was age 23.
The defendant at that time was age 30.
At the time of the marriage the defendant was employed at the Willimantic Savings Bank as the comptroller for the bank.
At the time that the parties were united in marriage, according to the plaintiff, neither party brought any substantial assets to the union nor any substantial debts. CT Page 1391
According to the plaintiff, difficulties in the marriage first surfaced after the birth of the first child. Serious problems developed in the period 1991 or 1992.
The defendant lost his job and position in 1992. The defendant apparently had medical problems and suffered an emotional breakdown. The plaintiff's testimony was to the effect that the defendant was tearful, cried a lot and slept a great deal.
Both of the parties have been involved in counseling with counselors and/or psychiatric assistant. The defendant still continues in that format.
The plaintiff feels that she has been a hard worker but of late has become somewhat tired.
The plaintiff's testimony was to the effect that she kept up the business she conducts, maintained the home and looked after the children. It was her testimony that the defendant was medically depressed a good period of the time.
The defendant's education extended through securing a bachelor's degree in accounting and in due course the defendant returned for extra educational benefits and secured a real estate license and, in addition, became a licensed mortician.
Further, the defendant, during the marriage, engaged in a program of buying and selling used automobiles for the purpose of economic advancement. On occasion, the defendant also worked in a funeral home owned and operated by the defendant's father.
At another point in time, the defendant worked for another bank, the Norwich Teacher's Union Bank. Apparently, the defendant had problems in that situation with regard to his superiors at the bank. On occasion, the defendant was unemployed.
The testimony was to the effect that the defendant quit and abstained from drinking alcoholic beverages in 1995.
There was apparently also a drug problem for the defendant in the early 1980's and alcohol or the immoderate use thereof did constitute a problem in the marriage.
The testimony was also to the effect that the defendant abused prescription drugs and that on one or more occasions the defendant had CT Page 1392 surreptitiously or inappropriately taken morphine medication that had been prescribed for his parent father.
The testimony was also to the effect that the defendant had purchased drugs over the Internet during the period 1991 to the present time.
At the time that the petition for dissolution was initially filed, the testimony was to the effect that there were threats of possible violence between the parties.
As noted in the review of the file, the plaintiff, in due course, secured a protective order from Dyer, J., and the defendant was arrested for a violation thereof, which apparently is still pending.
The defendant, in due course, after leaving the marital residence, moved in with his parents who reside on Reynolds Road in Norwich.
According to the plaintiff's testimony, the defendant returned to the marital home on occasion and she represented that certain items, papers and matters of like nature were missing from the home.
The plaintiff currently conducts and operates the hair salon business where various employees work at her direction.
At a point in time, the plaintiff learned of certain problems affecting her business by virtue of letters from the Internal Revenue Service (IRS) and claims made by that agency. The plaintiff learned in due course that there was a claim for $30,000.00± that was due the IRS of which she was apparently unaware. Subsequently, the sum of $10,000.00 was delivered over to the IRS and arrangements and a plan made for the payment of $800.00 a month to effect the orderly liquidation of the debt; however, before the full $10,000.00 could be delivered over to the IRS, the testimony was to the effect that the defendant took $3,700.00 from the account where those monies were deposited; however, it was subsequently repaid.
The plaintiff, also in due course, mindful of the fact that apparently the defendant had been acting sort of as a business manager for her business, learned that certain suppliers had not been promptly paid and there were monies owed to them and delinquencies. The plaintiff then decided to take over the management and conduct of the record keeping for herself. At one point, the plaintiff learned that there was $3,500.00 due and owing for more than 90 days with regard to her suppliers.
Also it was determined that there were personal property taxes due to the City of Norwich going back for the last three years amounting to CT Page 1393 $1,446.00. The plaintiff, in fact, was served with a tax warrant by representatives of the City and was obliged to pay the same, although she had apparently proceeded on the premise that the defendant in looking after the books, had seen that the taxes were discharged in an orderly fashion.
In addition, the plaintiff discovered that medical coverage for the family was two months in arrears. In addition to the hair care activity at the plaintiff's business, there is also a tanning salon located at the same location under her direction and control. The plaintiff's testimony was to the effect that she had problems with her employees and that several left due to undefined conduct on the part of the defendant. The plaintiff's testimony was to the effect that the defendant urged the plaintiff to sell the business and at one point in time it was put up for sale; no buyers however were secured.
The testimony was to the effect that since 1996 no partnership tax returns had been filed. It would appear that it is questionable as to whether or not an actual partnership evidenced by documents appropriately structured and comprehensive were ever in fact created. The testimony was to the effect that the defendant was charged with the preparation of the tax returns prior to the pending dissolution for the marital union.
The outstanding lease for the premises occupied by Meg's Salon is in the name of the plaintiff only. The plaintiff testified that the salon was doing reasonably well, at the present time was current on her obligations, except for the remaining balance due the IRS.
The plaintiff apparently has at this time ten employees, ladies skilled in hair cutting and like skills, working for her. The employees work on a commission basis; at least in part.
The plaintiff, in her testimony, expressed surprise at the extent of debts and obligations incurred by the defendant including the incurring of credit card debt occasioned by the defendant. At one point in time, the plaintiff, in an effort to stabilize the financial picture, cut up her credit cards; did not realize that the defendant had another one to a similar purpose and that the defendant continued to use the same.
The plaintiff's testimony is to the effect that as much as $25,000.00 has been used to achieve further educational attainments for the defendant including a degree in mortuary science and the real estate license.
The testimony indicated, that at least at one point in time, the defendant participated in automobile auctions and dealt with used motor CT Page 1394 vehicles.
Incident to an order entered by the court, Dyer, J., the plaintiff was allowed a weekly draw of $1,500.00 from the business.
The defendant departed the marital home premises in May of 2001 and, as noted above, resides with his parents.
The plaintiff leases a certain Jeep motor vehicle.
The plaintiff indicated that the minor child Marlee requires dental braces and that so far the plaintiff has paid $1,500.00 incident thereto.
The plaintiff's testimony was to the effect that the children are healthy; that the home in which the plaintiff and the children reside was purchased in 1983 by the plaintiff and the defendant. It was described as a 70-year old home in fair repair. Certain projects initially undertaken were not finished including two unfinished bathrooms. The cost to finish matters, which are still undone, varies between $5,500.00 and $17,000.00. Problems pertaining to the real estate involve an underground tank that serves the home premises with heating oil, which must be removed and placed above ground. The plaintiff's estimate for that was $2,500.00.
Her testimony was to the effect that the furnace is 25 years old and needs to be replaced. The estimated cost thereof to be $10,000.00; that the septic system needs to be replaced and is not properly working; that the leaching field is giving problems and the estimated cost to correct that is $6,500.00.
From the testimony of the witness John A. Moulson, the court finds that Mr. Moulson is a certified public accountant and has been for eight or nine years. He has a degree from the University of Connecticut. The plaintiff contacted this witness in April of 2001 and he assisted with regard to bringing order in payroll matters and back taxes to the business.
The plaintiff paid $1,450.00 for taxes as concerns certain issues brought to light as a result of guidance from the witness Moulson.
This witness testified that the business conducted by the plaintiff now appears to be stable, indicated that to the best of his knowledge and belief, no formal written partnership tax returns had been filed for the last four or five years; however, the income was reported apparently on individual 1040 returns. CT Page 1395
This witness' testimony was to the effect that it may well be that no actual written partnership agreements ever existed.
This witness' testimony was to the effect that the net income for the year 2000 for the business conducted by the plaintiff was to the amount of $30,082.00. For 2001, the estimated net income is $33,000.00 to $34,000.00.
The defendant apparently does not presently have any part in the day-to-day operation of the business conducted by the plaintiff.
The testimony was to the effect that the gross income anticipated for the year 2001 for the business would be $333,000.00.
During 2001 there were apparently some funds received by the defendant from the business entity.
In further direct examination, the plaintiff indicated that in fact there is no actual written partnership agreement in existence.
The witness verified the amount allowed to her for a weekly draw as approved by the court, Dyer, J., in the amount of $1,500.00 a week.
The plaintiff's testimony was to the effect that mindful of the defendant's activity with regard to used automobiles that there were three vehicles at the location of his parents' home at the present time. Apparently there were legal problems in the past with regard to this business that were eventually solved by the defendant.
The plaintiff created her own IRA.
The plaintiff has certain shares of Pfizer Corporation stock which she began securing three years ago through the help and assistance of a friend. Some of the shares initially were purchased with funds belonging to one of the children.
The plaintiff also testified that in the not too recent past that the defendant had filed for Social Security disability benefits and had been approved.
In May of 2000, the defendant gave the plaintiff $1,000.00 in cash.
The defendant also, according to the testimony, pays for the children's dance expenses. CT Page 1396
The defendant who resides in the home of his parents is about 1/2 mile distance from the marital home.
The plaintiff represented that she has shared personal property with the defendant to try to ease the transition.
The parties' former marital home was first acquired from the defendant's mother for and in consideration of the sum of $34,000.00. This was the property that was located on Flyer's Drive.
At one point in time the marital residence on Harland Road was subject to an attachment as concerns civil claims that were made against the defendant incident to his used automobile sales.
The plaintiff provides health insurance presently for the defendant. The portion attributable to the defendant apparently mindful of the earlier statement in this opinion is to the amount of $438.00.
According to the plaintiff, the defendant is under psychiatric care. He has suffered a breakdown. He is on medications.
The plaintiff's testimony is to the effect that her business known as Meg's Hair Salon was started in September 1989.
Before the marriage, the parties had dated for a period of eight years.
The business has been a viable entity for the last 12 years.
The amount due monthly as concerns the leased vehicle in the custody of the plaintiff is to the amount of $438.00.
According to the plaintiff, at the time that the defendant departed from the marital home it was represented that he stated that he would put the plaintiff in the cemetery.
The plaintiff, however, acknowledges that she has not been the subject of physical violence from the defendant nor has she inflicted any physical violence on the defendant according to her testimony.
The plaintiff's testimony is to the effect that she has always remained faithful to the defendant and that there have been no indiscretions.
The plaintiff adverted to the defendant allegedly purchasing controlled substances on the streets in New London.
The plaintiff testified as to a recent appraisal of the Harland Road CT Page 1397 home valuing the same at $260,000.00.
The plaintiff's testimony is to the effect that she stayed in the marital union because of her concern for the children and her love and affection for them.
As earlier noted in the memorandum, at one point in time the business was offered for sale at $150,000.00. No bids or offers were received.
In her testimony, the plaintiff indicated that she had made the last eight mortgage payments and that the payments were current and up to date in all respects.
The appraisal of the home premises was received by the plaintiff in October of 2001; the valuation allegedly being $260,000.00.
The plaintiff described the premises; indicated that the appraisal had been done by the Blair Agency and indicated that there were a variety of problems with the property including the well and water problems and the sanitary septic facility.
Some time during 1994 and 1995, the salon conducted by the plaintiff known as "Meg's Salon" was offered for sale. There were no prospective purchasers or buyers at that time.
The plaintiff had an ongoing line of credit with Fleet Bank.
In response to questions by the court, the plaintiff indicated that the marriage was of 22 years duration; that the child Marlee was age 11 and in the sixth grade; the child Karley was age 7 and in the second grade; both children were described as being healthy and doing well in school and academia.
The plaintiff's testimony indicated that she felt that the defendant in his conduct withdrew from the family.
Apparently there were no instances of physical violence.
The plaintiff indicated that alcohol constituted a problem as well as an addiction to prescription medication including morphine.
The plaintiff's testimony was to the effect that the defendant changed jobs frequently. In 1996 the defendant became a licensed realtor; in 1999, a licensed mortician.
The plaintiff indicated that she had at all times endeavored to promote CT Page 1398 a good relationship between the defendant and the children.
The defendant in testifying indicated that he had been born on April 13, 1949; that he had parents and siblings in the home area and enjoyed a good relationship with his family.
At the time of the marriage, the defendant was age 31. He has a bachelor of arts degree secured from Quinnipiac College.
The defendant's educational costs in the main were paid by the use of charge or credit cards.
The defendant was employed during the period 1978 through 1981 at Willimantic Savings Bank as the comptroller.
In 1981 through 1985 the defendant worked for his father in the family funeral business.
In 1985 to 1991 the defendant was comptroller of the Navy Federal Credit Union.
The funeral home with which the defendant was associated was known as Church and Allen and subsequently, he was associated with the Belmont Funeral Home.
The defendant's present employment is with Mallon Chevrolet where his earnings are modest and on a part-time basis. There is apparently some part-time employment as a mortician.
In 2001 the defendant secured a Social Security disability determination. He had applied in May of 2001 and the matter was apparently expeditiously approved in June of 2001. The effective date of the benefits being somewhat retroactive was December of 2000 and the monthly benefit was to the amount of $1,280.00.
In August of 2001 the defendant received for each child $1,920.00 in two separate payments. The payment covered a number of months. The testimony was to the effect that the defendant spent these monies on and for the welfare and betterment of the children.
There appears to be some confusion with regard to a prior order entered by the court, Dyer, J., as concerns whether those funds should have been held in escrow.
The defendant values the plaintiff's business entity, Meg's Hair Salon, at $85,000.00 based on his knowledge of the gross sales and sales CT Page 1399 of other like establishments in this area.
At one point in time, the sum of $8,000.00 was taken from the children's accounts and used to purchase Pfizer stock.
Since September 27, 2001 the defendant has been residing with his parents and pays $750.00 monthly. The payments, according to the testimony, are made in cash.
The defendant acknowledged that in the year 2001 his income is probably in the neighborhood of $30,000.00+.
For a long period of time the defendant has been engaged in buying and selling used automobiles. Some of this activity resulted in suits being brought against the defendant as concerns presumably warranties or representations as to the motor vehicle.
The defendant indicated he presently has no life insurance and has requested a substantial sum from the home and residence to be secured in one form or another.
It is the defendant's hope and wish that any Pfizer stock in the names of either of the parties should be set aside and held for the welfare and betterment of the children.
The defendant's claim is to the effect that he feels he should have the sum of $42,500.00 with regard to the business known as Meg's Hair Salon mindful of the work that he did in earlier years, bookkeeping, tax work and various and sundry allied activities pertaining to the business.
The defendant's posture was to the effect that at the time of the marriage that he brought $100,000.00 worth of assets to the marriage in the form of automobiles, stock and cash.
The former home of the parties at 57 Flyer's Drive was a residence secured from his parents and was purchased for the sum of $35,000.00. That residence was sold in August of 1983 and from the proceeds of that sale, $27,000.00 was put into the new home and residence.
At one point in time, the defendant had 1,000 shares of American Solar Panels, which were sold at $26.00 a share.
The defendant in his lay valuation of the marital home indicated that he felt that it was worth $300,000.00 and that the subject premises stand on land that constitute four building lots. CT Page 1400
The defendant also indicated that he had done extensive work and remodeling on the home and at one time put $40,000.00 into a new kitchen.
The defendant's testimony is to the effect that between himself and the plaintiff that over $100,000.00 has been put into the home.
Apparently at the time that the defendant was served with the petition for dissolution, he did not believe that the marriage had irretrievably broken down.
Mindful of prior orders entered, the defendant apparently was arrested on one or more occasions with regard to re-entering the marital home or for harassment. These charges allegedly are still pending.
The defendant's lament was also to the effect that there was no warmth or kindness in the relationship and no matters of intimacy.
The defendant indicated that on occasion he suffers from being depressed.
At one point in time in his career, he participated in certain musical endeavors for a period of over 23 years.
The defendant indicated that his consumption of alcoholic beverages is now limited to only drinking beer. His testimony was to the effect that he has been diagnosed as being afflicted with OCD and ADFG problems.
In 1966 the defendant apparently suffered an injury whereby his back was broken and problems with regard to that injury apparently still linger.
At one point in time, the defendant was employed by the Hartford Trade Center at $12.00 an hour.
The defendant is on a regimen of medication including Effexor and Colonoden, which is for a sleep disorder. He has apparently been afflicted with this over the last nine months.
The defendant acknowledged that he had inappropriately taken a prescribed medication of morphine from his parent father and indicated that he no longer participates in any stock market activity.
The defendant acknowledged that his approval for Social Security benefits was in fact quite promptly processed. He indicated incident thereto that he had submitted eight years worth of medical records to Social Security. CT Page 1401
His testimony is to the effect that any Social Security benefits that he has received as concerns the children have been used and utilized for their sole welfare and benefit and support.
The defendant indicated that in addition to other licenses or talents that he has that he has worked on occasion as a tax consultant. Further, the defendant indicated that he has a public service license for the operation of certain motor vehicles including a limousine.
The defendant's testimony was to the effect that at one point in time when things apparently were not going well with regard to Meg's Hair Salon that, in his words, he rescued the business.
The defendant claims and represented that he filed a partnership agreement with the IRS as concerns the parties involved in Meg's Hair Salon but no such document was offered to the court.
The defendant indicated that in 1998 having, in his words, contributed to the building of the business known as Meg's Hair Salon that he then turned to matters of education. The defendant claimed that, in all respects, he was financially generous to the plaintiff; that he gave her gifts, jewelry and matters of like nature and in 1999 a new motor vehicle, admittedly on a lease-payment basis, however.
In addition, the defendant indicated that there were a variety of tools and equipment still at the home and residence which he was desirous of having and claimed that in due course the plaintiff would, in his words, throw these items out in the event that he did not retrieve them or have them delivered over to him.
According to the representations of the attorney for the minor children, the sum of $5,200.00± has been spent for counseling for these children. The children, it was represented, are fairly stable and doing well.
The defendant's wish is that the children should remain in their home where they presently are and be as happy as the circumstances permit.
The defendant made claim, notwithstanding the foregoing observations in the memorandum, that on one occasion that the plaintiff did assault him and certain photographs reposed within the confines of the court's file as concerns prior motions in the matter but were not offered as exhibits in this proceeding.
It was the defendant's position that the plaintiff has outside CT Page 1402 friendships with members of the opposite sex.
At the time of trial, two certain checks were delivered over into the hands of the attorney for the plaintiff, Attorney Eckert. The same being checks for the welfare and betterment of the two children. Each check being in the amount of $333.00.
There was testimony to the effect that the parties had taken vacations over the years either to Maine or Rhode Island.
The defendant's initial educational degree was in 1972. The mortuary degree was secured from Quinnipiac-Briarwood College.
The defendant indicated that it was his intention in the near term to file a petition in bankruptcy.
The defendant's attitude was to the effect that among other things that there was a lack of communication and breakdown incident thereto which contributed to the downfall of the marriage, plus he acknowledged his fits of depression, panic attacks and matters of like nature.
The defendant made no request for alimony as against the plaintiff and asks of the court that his financial interest in the plaintiff's business be recognized.
At the time of the alleged attack by the plaintiff on the person of the defendant, there was no indication that the plaintiff was arrested or charged incident thereto.
Among any prescription regimen, the defendant no longer uses or resorts to Oxycontin.
For the next several months, the Social Security benefits to the defendant will be in the amount of $1,335.00 a month.
In addition, during his periods of eligibility, the defendant will also receive $333.00 a month for each child.
The defendant claimed that there was one party in particular who kept company with the plaintiff that the plaintiff on occasion would come in at 2:00 or 3:00 in the morning and matters of like nature.
Incident to contacts between the defendant and the children, phone calls of an endless nature or non-stop nature apparently have existed because of the emotional problems between the plaintiff and the defendant as concerns contacts with the children. CT Page 1403
Although not a witness and not under oath, the court notes however the representations by the attorney for the minor children indicating that things have improved of late as concerns contacts between the defendant and the children and an indication that the children are academically gifted and are emotionally doing well at the present time.
From the exhibits, the court makes the following findings:
Court Exhibit 1 is a document entitled "Agreement Regarding Custody" as concerns the minor children and will be touched on and set out in the subsequent orders of the court.
Court Exhibit 2 is, in a similar vein, entitled "Minor Children's Proposed Orders Regarding Support" and will be touched on in the court's orders, which will be set forth hereinafter.
Defendant's Exhibit A appears to be a series of sheets pertaining to expenses incident to the business conducted by the plaintiff and allied matters. It is difficult for the court to interpret the content of that particular exhibit.
Defendant's Exhibit B is the joint federal income tax return of the parties for 1998. It reflects total income of the parties for that year of $34,253.00 including income on the part of the defendant for funeral service work. It reflects the share that the parties were entitled thereto incident to income from Meg's Hair Salon.
Defendant's Exhibit C is the federal income tax return of the parties for 1999 which reflects a total income of the parties according to the return of $38,460.00. Once again, the return is difficult to interpret. It does not appear to reflect the gross income of the business nor a clear breakdown as to the shares of any proceeds or profit therefrom by the parties.
Defendant's Exhibit D is a Uniform Residential Appraisal Report for 287 Harland Road, Norwich. It values the premises at $260,000.00. The appraisal report consists of only two pages, no photographs, no indication of comparables or matters of like nature.
Plaintiff's Exhibit 1, a property tax warrant issued against the business known as Meg's Hair Salon at 16 New London Turnpike claiming the sum of $1,330.94 for delinquent personal property taxes; the plaintiff laying the blame for this at the door of the defendant.
Plaintiff's Exhibit 4, statement from Credit Counselors of America CT Page 1404 indicating a variety of creditors of the defendant amounting to $76,035.58.
Plaintiff's Exhibit 5, a photocopy of a check drawn on Fleet Bank to the order of Robert Krodel in the amount of $3,700.00, dated June 12, 2001.
Plaintiff's Exhibit 3, a writing entitled "List of Creditors We Owe," apparently in the hand of the plaintiff, indicating the amount of debt being $66,000.00 plus $1,600.00 further due to the IRS.
Plaintiff's Exhibit 2, copy of U.S. Treasury check from Social Security payable to Robert E. Krodel, Jr., in the amount of $7,697.00. This is the draft which has apparently been in the care, custody and control of defendant's counsel.
Plaintiff's Exhibit 6, photocopy of the deed of Elizabeth J. Krodel to Robert E. Krodel, Jr. and Margaret M. Krodel as concerns premises known as 57 Flyer's Drive, Norwich. The deed is dated March 4, 1980 and recorded in the Norwich Land Records in Volume 530 at page 137.
Within the confines of the same exhibit is a document entitled "Mortgage Deed" from Robert E. Krodel, Jr. and Margaret M. Krodel to Robert E. Krodel and Elizabeth J. Krodel, apparently parents of the defendant, as concerns the Flyer's Drive property, which mortgage deed was in the amount of $32,000.00. It is dated March 4, 1980 and recorded in the Norwich Land Records in Volume 530 at page 139.
Within the confines of the same exhibit, there is a mortgage deed from Robert E. Krodel, Jr. and Margaret M. Krodel to the Norwich Savings Society as concerns the then home and residence of the parties. At that time, the mortgage amount being $44,000.00.
Within the confines of the same exhibit, there is a copy of a warranty deed, Robert E. Krodel, Jr. and Margaret M. Krodel to Craig E. Eckert. The property described as being in the Gallows Hill Section of Norwich; apparently the Flyer's Drive property. The same being dated September 30, 1983 and recorded in the Norwich Land Records in Volume 616 at page 2.
Plaintiff's Exhibit 7, a document entitled "Investment Plan Statement for Shareholders of Pfizer, Inc.," addressed to the plaintiff, Margaret Krodel, indicating common stock ownership of 549.348 shares; market value as of the date of the document; to wit, February 15, 2000, being valued at $19,536.46.
Plaintiff's Exhibit 8 is a collection of deeds establishing the manner CT Page 1405 by which the plaintiff and the defendant acquired title as to the Harland Road property; a subsequent mortgage to the Norwich Savings Society in the amount of $38,000.00, dated June 15, 1983.
Within the confines of that exhibit, there is a copy of a mortgage deed from the plaintiff and defendant to apparently the parents of the defendant in the amount of $38,000.00 subject to the first mortgage to Norwich Savings Society.
From the plaintiff's financial affidavit, it is noted her occupation is that of a hair stylist/owner for premises known as Meg's Hair Salon located at 16 New London Turnpike in Norwich.
The affidavit indicates an average weekly draw of $1,125.00; total weekly expenses shown as $1,160.99. These weekly expenses include the mortgage payment.
The affidavit indicates a balance due on credit card and IRS obligations to the amount of $13,300.00.
The 287 Harland Road property is valued at $180,000.00 with a mortgage of $138,000.00 for the resultant equity of $42,000.00.
The 2002 Jeep Cherokee is a leased vehicle, no value shown.
No value shown for household furnishings and matters of like nature.
A People's Bank savings account in the amount of $1,200.00; checking account of $500.00; Fleet Bank, value not shown; 557 shares of Pfizer stock valued at $21,166.00; a Roth IRA at $6,000.00; Meg's Family Hair Salon valued at $20,000.00; a business bank account at $4,000.00.
From the defendant's financial affidavit; occupation shown as temporary business manager at Don Mallon Chevrolet; gross weekly wage, $115.00; deductions, $23.80 for a net of $91.20. Additional income from Social Security, weekly gross, $290.70. It is to be noted that this is intermittent; funeral services work, intermittent, gross, $168.00; according to the affidavit there is a minus income from allied sources and a total net weekly income of $91.21. Expenses, $636.13; total debt indicated to be $96,862.00.
The defendant values the real estate at 287 Harland Road at $300,000.00 with total mortgage debt of $136,000.00 for an alleged equity of $164,000.00.
No motor vehicles shown; no items of personalty; $7.00 in the bank; an CT Page 1406 acknowledgment that the Pfizer stock is in the name of the plaintiff; no assets as reflected on the affidavit.
To the affidavit is attached a Schedule A indicating credit card and bank debt to the amount of $76,362.89. In addition, there is a Schedule B, which apparently is a list of items of personal property which the defendant is desirous of securing.
From the health form, the court notes that this is the first marriage for both of the parties. The husband's education is indicated as extending through securing a college degree; the wife's education extending through one year in college.
 The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) §§ 46b-82 regarding alimony, 46b-62 regarding attorney's fees and 46b-55, 46b-83 and 46b-84 as concerns support.
The court has considered all of the applicable case law that governs the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issues presented, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties and the needs of the minor children.
The court has considered the standards of living of the parties.
The court has considered the testimony with regard to the two minor children issue of this marital relationship, Karley M. Krodel and Marlee E. Krodel.
The court has considered the advice and comments of the attorney for the minor children.
The court has considered the present residential arrangement with regard to the minor children, their ages, their educational situation and emotional stability.
The court has considered the relationship that exists insofar as the CT Page 1407 plaintiff and the defendant are concerned with the minor children.
The court has considered the respective financial positions of the plaintiff and the defendant.
The court has considered their prospects for future income and opportunities incident thereto.
The court has considered the issue of fault and the emotional problems which have beset the defendant.
 Discussion
This is a marriage of 22 years duration; the first marriage for each of the parties; two children issue of the relationship, ages 7 and 11; welfare is not involved.
The plaintiff is age 45. Her education consists of graduating from high school and one year at the hairdressing school. Her health appears to be good.
The court has considered the time and effort that the plaintiff has put into the creation of the business entity which she conducts known as "Meg's Hair Salon."
The court has considered the long-term emotional problems that have beset the defendant including problems with alcohol, prescription addiction and matters of like nature. Both of the parties have been involved in counseling.
The defendant's education, as noted, consists of a bachelor's degree in accounting, his subsequent educational endeavors and his being apparently licensed as a mortician, being proficient as a tax consultant and a real estate agent.
The court is mindful of the expenses that were incurred incident to the defendant achieving that status.
Admittedly, as is the case in many marital unions, there were financial problems to a greater or lesser degree. The court is satisfied that the defendant did, particularly in the early years, contribute to a considerable degree in the business activity known as "Meg's Hair Salon" doing the tax work incident thereto, actually participating in some activities, custodial and otherwise.
The court is mindful of the testimony as concerns the need for various CT Page 1408 and sundry fairly substantial items that need to be attended to with regard to the Harland Road property.
It would clearly appear that the plaintiff is a hard worker. It would seem that the causes for the breakdown were emotional problems that afflicted the defendant; again, problems involving alcohol and substance abuse; however, in addition it would appear that for a considerable period of time, there has been a lack of warmth and intimacy between the parties.
The defendant at this juncture continues on a regimen of medication and has been determined by Social Security to be disabled. The Social Security benefits, however, appear to be of an intermittent nature.
The court is somewhat concerned with regard to the fact that no expert witness was presented with regard to a valid valuation of the business mindful of the testimony indicating that allegedly for one year that the gross receipts would amount to $330,000.00±; again, mindful of the draw allowed pursuant to the order of Judge Dyer to the plaintiff. This evidence or exhibits in this category would have been of material help and assistance to the court in arriving at a realistic valuation of the business. Why such evidence was not presented, is a matter of conjecture.
The tax returns, which the court has examined, do not assist the court very much in that particular event.
The court is satisfied that both of the parties have apparently an abiding love and affection for the children and wish to do the best that they can for them.
It is to be hoped that the charges pending against the defendant will be resolved with the dissolution of the marital union and that some stability can be introduced into the overall situation.
The court is mindful of the issues raised by plaintiff's counsel in the trial brief filed with the court.
The court is mindful of the defendant's 2001 income in part from Social Security and any modest part-time jobs. The court is also mindful of the defendant's testimony as concerns any income secured incident to the disposition of certain automobiles that had been in the possession of the defendant.
The court is mindful of the rental status by the defendant at the home of his parents and his rent-free arrangement with his parents, at least CT Page 1409 for a time, before the present arrangement was put into place. The memorandum reflects the manner in which the defendant pays his parents.
The court is particularly mindful of the cost to the plaintiff for that portion of the medical insurance benefits which are attributable to the defendant amounting to $438.00 a month.
The court is mindful that the plaintiff apparently in her draw from the business took less than what the court, Dyer, J., had allowed.
The court is mindful of the financial tasks required of the plaintiff in managing the business, looking after the home and the looking after of the children.
The court is mindful of the testimony with regard to the home and residence and those items that may need attention in the near term and the amounts thereof.
The court is mindful of the undisclosed problems that beset the plaintiff with regard to monies due the IRS and creditors, presumably as a result of inattention to those situations by the defendant while he was looking after the books.
It would appear that with the help of the witness Moulson that the plaintiff now is better able to conduct and manage the business.
The court is mindful of the fact that insofar as some of the credit card debt is concerned that a portion thereof was incurred incident to the furthering of educational attainments on the part of the defendant with regard to the mortuary degree and other educational matters.
It would appear also that the plaintiff had endeavored to limit or stabilize financial problems insofar as the use of credit cards were concerned mindful of the fact that she cut up the one that she had and overlooked or was unaware of the fact that the defendant had a duplicate card with which he continued to run up charges.
The court is also mindful of the situation that arose with regard to the leased automobile initially provided by the defendant but then the same being required to be turned in because of lack of cooperation by the defendant with the plaintiff.
On the basis of the evidence, while the parties may have anticipated that in fact that they had a de facto partnership, it would appear that the necessary documents were never structured or put together to define that situation. CT Page 1410
The Pfizer stock in the name of the plaintiff presumably was structured and created, at least in part' with the thought and vision that the same would be available in due course for higher educational purposes of the children.
As concerns the defendant's sale of the Solar King shares, there were no clear exhibits presented to the court with regard to precisely what was secured and the disposition of those funds.
The court endeavors to take into account the defendant's relationship with Social Security and the amount and extent of the benefits received therefrom; not only for himself but for the welfare and benefit of the minor children.
The court enters the following orders:
In accordance with the agreement of the parties and with the consent and approval of the attorney for the minor children, the court, as to custody, orders that the plaintiff and the defendant shall share joint legal custody. The plaintiff mother shall be the primary custodial residential parent.
The defendant father shall have access to the children's school and medical records pursuant to C.G.S. § 46b-56.
The children shall continue in counseling with Sue Morton, LCSW, for so long as the therapist deems it necessary. The parties shall participate with said counseling as deemed appropriate by the therapist.
The father's access shall be as follows: Tuesday after school until 8:30 p.m. and Saturday from 3:00 p.m. to Sunday at 12:00 p.m. Telephone contact between 7:00 p.m. and 7:30 p.m. on those days that the defendant does not have access with the children. The children shall initiate the phone call. Visitation shall be reviewed in three months or sooner upon recommendation of the therapist with the goal of expanding father's visitation if recommended by the children's therapist. The issues of summer and school vacation access shall be addressed at a later date. The major holidays shall be alternated as mutually agreed upon as hereinafter set forth; to wit, holiday access shall be as follows: the holidays shall include Christmas Day 4:00 p.m. until 6:00 p.m. December 26th; Thanksgiving Day 5:00 p.m. until the next day 5:00 p.m.; Easter Day 3:00 p.m. until 8:00 p.m.; defendant's birthday 4:00 p.m. until 8:00 p.m. Defendant father shall have two Monday holidays per year. The parties shall each have reasonable access on the children's birthday. CT Page 1411
Neither party shall relocate outside the State of Connecticut with the minor children unless there is a court order approving same or the parties agree in writing. The foregoing all in conformity with Court Exhibit 1 submitted by the attorney for the minor children and with the consent and approval of the plaintiff and the defendant and their respective counsel.
As concerns support for the minor children, any and all Social Security benefits received by the father for the benefit of the children shall be paid to the mother as child support for the minor children. In the event that there are periods of time when the defendant father does not qualify for benefits, he shall pay child support in accordance with the Guidelines.
The mother shall maintain medical insurance for the benefit of the minor children so long as it is available for a reasonable cost. The cost of any unreimbursed medical including counseling and dental expenses shall be equally apportioned.
Any Social Security benefits defendant father received in 2001 for the benefit of the children not already paid over shall be paid to the mother from the $7,670.00 Social Security check which is being held in escrow by defendant's counsel, which monies are to be used for the support of the minor children.
The plaintiff mother shall claim the children as dependents and exemptions for federal and state income taxes.
The costs and charges for the services of the attorney for the minor children shall be equally apportioned between the parties subject to credit for any payments already made.
As concerns the issue of support for the minor children, mindful of the defendant's status with Social Security and predicated upon the minor children's trial brief filed by the attorney for the minor children, and mindful of the content thereof and the two sets of guideline worksheets presented to the court, it would appear that at such time as the defendant is receiving benefits from Social Security and only part time or sporadic income from other sources and predicated upon the figures set forth by the attorney for the minor children and on the premise that the Social Security income received for the benefit of the minor children is delivered over to them, the defendant's obligation on that basis would be $26.00 per week. The second guideline worksheet presented to the court by the attorney for the minor children is predicated upon the defendant working on a regular basis and predicated upon that guideline worksheet that is his employment and suspension of the Social Security benefits the CT Page 1412 support for the minor children would be to the amount of $116.00 per week.
In addition, mindful of the recommendations of the attorney for the minor children and the representation that the draft in the amount of $7,680.00 held by the defendant's counsel represents monies from Social Security for the benefit of the minor children during 2001 and acknowledging the defendant's claim with regard to spending a portion of said sum on furniture and other benefits for the minor children to the amount of $1,100.00, the court directs that the sum of $6,580.00 shall be set over and delivered to the plaintiff for the welfare and benefit of the minor children.
The ongoing benefits received by the defendant attributable to the minor children during such periods of time as he is eligible for the Social Security benefits shall be delivered and turned over to the plaintiff for the support, welfare and maintenance of the children. In the event that the plaintiff applies to Social Security for the plaintiff being designated as the appropriate payee, that course may be followed subject to the approval of the Social Security Administration.
Mindful of the present economic state of affairs, the plaintiff may claim the two minor children as dependents and exemptions for federal and state income tax purposes.
Mindful of the request set forth in the proposed orders or claims for relief by the plaintiff's counsel, the court enters no order of periodic alimony as concerns either the plaintiff or the defendant.
The plaintiff shall maintain medical insurance coverage as available incident to her business activity, Meg's Hair Salon, for the benefit of the minor children. The plaintiff and the defendant, as noted, shall equally be responsible for any uncovered or unreimbursed medical expenses as concerns the minor children. The plaintiff shall be solely responsible for the first $100.00 per child in any particular calendar year.
Mindful of the defendant's condition, the plaintiff shall maintain medical insurance for the benefit of the defendant for a period of 24 months. The plaintiff shall be responsible for the payment of said cost and any uncovered or unreimbursed medical expenses pertaining to query as to whether or not it was entitled to that title by virtue of the tax approach taken by the parties. It would appear that the defendant did help and assist with regard to various and sundry aspects of the business and some recognition thereof should be accorded to the defendant.
The plaintiff wife shall retain the business known as Meg's Hair Salon CT Page 1413 for her own use and purpose, be responsible for any obligations, debts or liabilities incident thereto present or pending including any debt to the Internal Revenue Service or the Department of Revenue Services of the State of Connecticut and hold the defendant harmless and indemnify him therefrom. In consideration thereof, the plaintiff shall pay and set over to the defendant the sum of $15,000.00; the same to be paid within six months.
As concerns certain property known as 152 Harland Road in Norwich, the plaintiff apparently makes no claim incident thereto and neither financial affidavit reflects the same or describes or values the asset and the defendant may retain the same.
As to personal property, the plaintiff may have and retain the contents and furnishings of the marital home except for those items requested by the defendant which are set forth on the attached schedule. In the event that there is any dispute with regard to those items of personalty, the same should be referred to arbitration.
Each party shall be responsible for the payment of their own attorney's fees.
The plaintiff may retain possession of the 2002 Jeep automobile and continue the lease payments due thereon; there being no liability for payment of the same attached to the the defendant solely shall be his sole and separate responsibility.
The marital residence located at 287 Harland Road in Norwich, which is currently occupied by the plaintiff and the minor children, as concerns said marital home, the defendant shall transfer by a good and sufficient deed his equity in said property to the plaintiff. In consideration thereof; the plaintiff shall execute and grant to the defendant a note and mortgage deed in the amount of $45,000.00 with interest thereon at the rate of 3% annually. This obligation shall be due and payable upon the earliest of the following conditions: the youngest child attaining the age of 18 or age 19 if currently enrolled in an educational institution; the plaintiff ceasing to use the dwelling as her primary residence; the sale of the residence; the death, remarriage or cohabitation of the plaintiff; a default in the payments of any mortgages or encumbrances on the property on the part of the plaintiff or a declaration by the plaintiff of bankruptcy.
The plaintiff shall be responsible for the mortgage debt attributable to 287 Harland Road and hold the defendant harmless therefrom.
As concerns the Pfizer stock presently in the name of the plaintiff; CT Page 1414 said securities shall be established as and constitute an educational trust for the welfare and benefit of the two minor children. The plaintiff may be designated as the trustee and shall provide verification of the status of the same on an annual basis to the defendant.
As to the business known as Meg's Hair Salon, it would appear on the basis of the evidence and the exhibits that while the parties may have treated the entity as a partnership, defendant.
The plaintiff may retain the People's Bank savings account shown on her affidavit in the amount of $1,200.00, the People's Bank checking account shown on her affidavit in the amount of $500.00. There is no value shown as concerns a reference to a Fleet Bank checking account on the return.
The plaintiff may retain her $6,000.00 Roth IRA and the monies in the plaintiff's business bank account incident to the conduct of Meg's Hair Salon.
The plaintiff shall be responsible for the Home Depot debt shown on her affidavit, the Citibank debt shown on her affidavit and the FirstUSA debt shown on her affidavit. The amounts being in sequence; $400.00, $1,800.00 and $2,200.00.
The plaintiff shall be responsible with regard to the anticipated or future obligations due and owing to the Internal Revenue Service.
The defendant shall be responsible for the Discover Card debt, the Chase credit card debt, the MBNA obligation, the FirstUSA debt, the ATT Universal debt, the Citibank debt, Household Credit and GMAC. The defendant may retain his Roth IRA in the amount of $6,000.00 shown on his financial affidavit.
The plaintiff shall be responsible for the Sears debt.
The defendant shall be responsible for any debt due and owing to his parents as shown on his financial affidavit.
The defendant in the allocation of debt is responsible for the $18,000.00± charged for additional educational purposes embarked upon by the defendant during the course of the marriage and any obligation within the confines of the listed debts that may have been attributable to the automobile-selling activity engaged in by the defendant.
It is the court's understanding that it is the near term intention of the defendant to file a petition in bankruptcy. CT Page 1415
Any credit cards that are in the joint names of the parties shall be terminated and canceled and may be reestablished in the individual names of the parties as they see fit.
The court is mindful of the wide gap between the plaintiff and the defendant in valuing the marital home asset.
The court is also mindful of the wide gap in valuing the business but, of necessity, must work with what is available to the court by way of the testimony and exhibits.
Hopefully in the passage of time, mindful of the many licenses and skills which the defendant possesses, he may be able to improve his financial outlook.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, J.
 SCHEDULE "B"
[EDITORS' NOTE: SCHEDULE B IS ELECTRONICALLY NON-TRANSFERRABLE.]